IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

No. 2:11-CV-00071-FL

| | |
|---|---|
| TM, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) ORDER |
| GARY CHARLES ANDERSON, | ) |
| KATHERINE GAIL ANDERSON, CYA | ) |
| OBX, LLC, ANDERSON HOMES OF | ) |
| THE OUTER BANKS, LLC, LINDA | ) |
| DESIBIA, ELIZABETH DESIBIA, | ) |
| ALEXANDRA DESIBIA, QUINN | ) |
| DESIBIA, AND PARIS FASCHETTE, | ) |
| | ) |
| Defendants. | ) |

This matter is before the court on four motions: a motion to dismiss by defendants Linda Desibia, Elizabeth Desibia, Alexandra Desibia, and Quinn Desibia (collectively the "Desibia defendants") (DE # 48), to which plaintiff has responded in opposition (DE # 53); two motions for costs and to strike by defendants Gary Charles Anderson, Katherine Gail Anderson, CYA OBX, LLC, and Anderson Homes of the Outer Banks, LLC (collectively the "Anderson defendants") (DE # 50, 55), to which plaintiff has responded in opposition (DE # 59, 62); and a motion for extension of time for service and to conduct discovery by plaintiff (DE # 60), to which no response has been filed. In this posture, the issues raised are ripe for decision. For reasons given, the Desibia defendants' motion to dismiss (DE # 48) is granted in part and denied in part. Also for reasons given below, the Anderson defendants' first motion for costs and to strike (DE # 50) is denied as moot, and

their second motion for costs and to strike (DE # 55) is granted in part and denied in part as to the motion for costs and denied as to the motion to strike. Finally, plaintiff's unopposed motion for extension of time for service and to conduct discovery (DE # 60) is granted.

## BACKGROUND

Plaintiff filed complaint on December 21, 2011, asserting a federal claim pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO") along with several state law claims, all arising out of an alleged scheme to shield assets from plaintiff, a judgment creditor of defendants Gary Charles Anderson ("Gary Anderson") and Katherine Gail Anderson ("Katherine Anderson"). Plaintiff's claims are contained in complaint spanning over forty (40) pages. The core of plaintiff's claims devolves around allegations the Anderson defendants, the Desibia defendants, and Paris Faschette conspired to commit fraudulent transfers of assets belonging to Gary Anderson and Katherine Anderson in order to secrete them from plaintiff and frustrate efforts of plaintiff to collect an award in arbitration confirmed as a Florida and North Carolina judgment against Gary Anderson and Katherine Anderson in the amount of $403,335.43 plus interest.

On February 28, 2012, the Desibia defendants filed motion to dismiss pursuant to Rules 9, 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. On March 5, 2012, the Anderson defendants filed an incorporated answer and motion for costs and to strike. On March 27, 2012, the Anderson defendants filed an amended answer and separately refiled their motion for costs and to strike.[1] On April 20, 2012, plaintiff filed a motion for extension of time to serve defendant Paris Faschette and for leave to conduct third-party discovery.

## DISCUSSION

---

[1] As a result of Anderson defendants' refiling of the motion (DE # 55), the first motion for costs and to strike (DE # 50) is denied as moot.

A.   **Motion to Dismiss**

The Desibia defendants seek to dismiss the RICO claims against them for failure to state a claim, pursuant to Rule 12(b)(6), and to dismiss the remaining state law claims for lack of personal jurisdiction, pursuant to Rule 12(b)(2). The court will address each in turn.

1.   **RICO Claims**

a.   **Standard of Review**

The purpose of a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted is to eliminate claims that are factually or legally insufficient. Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "A court need not accept a complaint's legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Alfaro v. United States, No. 5:09-CT-3073-D, 2011 WL 561320, at *1 (E.D.N.C. Feb. 8, 2011) (citing Iqbal, 129 S. Ct. at 1949-50; Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009)).

The sufficiency of a civil RICO claim is judged in accordance with the notice pleading requirement of Rule 8(a), requiring a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). At the same time, however, "where RICO

claims are based on predicate acts of fraud, the heightened pleading standard set forth in Rule 9(b) of the Federal Rules of Civil Procedure applies." Field v. GMAC, LLC, 660 F. Supp. 2d 679, 686 (D. Md. 2011) (citing Menasco, Inc. v. Wasserman, 886 F.2d 681, 684 (4th Cir. 1989)). Rule 9(b) requires that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

    **b.    Analysis**

Plaintiff asserts claims under RICO subsections (b), (c), and (d). 18 U.S.C. § 1962(b), (c), (d). To state a RICO claim under subsection (b), plaintiff must plead facts that, if proven, would tend to establish (1) the acquisition or maintenance of an interest in or control; (2) of an enterprise; (3) through a pattern of racketeering activity. 18 U.S.C. § 1962(b); see Beck v. Prupis, 529 U.S. 494, 497 (2000). The elements of a RICO claim under subsection (c) are: (1) the conduct; (2) of an enterprise; (3) through a pattern of racketeering activity. 18 U.S.C. § 1962(c); see Salinas v. United States, 522 U.S. 52, 63 (1997). "'Enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "Racketeering activity" includes, inter alia, "any act which is indictable" under specifically enumerated criminal provisions, including those relating to mail and wire fraud set forth in 18 U.S.C. §§ 1341 and 1343. 18 U.S.C. § 1961(1). Finally, a "'pattern of racketeering activity' requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity," 18 U.S.C. § 1961(5), and the predicate acts must be related and amount to or pose a threat of continued criminal activity, H.J. Inc. v. Northwestern

4

Bell Telephone Co., 492 U.S. 229, 239 (1989). Subsection (d) is aimed at conspiracies to violate subsections (a) through (c). To state a subsection (d) claim, plaintiff must allege that "each defendant agreed that another co-conspirator would commit two or more acts of racketeering." United States v. Pryba, 900 F.2d 748, 760 (4th Cir. 1990).

The Desibia defendants first contend, with respect to subsections (b) and (c), that plaintiff failed to properly allege a pattern of racketeering activity as to each of them and that, therefore, the RICO claims against them should be dismissed. Plaintiff alleged predicate acts of mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343; specifically, that on or about October 8, 2009, Andersons transferred a total of $104,000.00 "to the Desibia family via personal checks" through the U.S. mail to Linda Desibia, Elizabeth Desibia, Quinn Desibia, and Alexandra Desibia in the amount of $26,000.00 each and that "[d]uring late 2010," Andersons transferred, by use of the U.S. mail and wires, $26,000.00 to each Desibia defendant. (Compl. 97, 101-108, 242(k)-(n), 260(k)-(n)). It is not entirely clear to the court that two sets of transfers to each Desibia defendant actually took place.[2] However, even assuming, *arguendo*, that there were two predicate acts as to each Desibia defendant, the court finds that they are insufficient to satisfy the pattern requirement.

The Fourth Circuit has been "cautious about basing a RICO claim on predicate acts of mail and wire fraud because it will be the unusual fraud that does not enlist the mails and wires in its

---

[2] It appears that "2010" may have been a typographical error and that plaintiff intended to refer to the October 2009 transfers, as occurring in "late 2009." In the "Background Facts" section of complaint entitled "Illicit Transfers Involving the Desibias," plaintiff makes its allegations with respect to the October 8, 2009 transfers of $26,000.00 to each Desibia defendant, (Compl. ¶¶ 101-108), but makes no mention of any "late 2010" transfers, which only appear in counts ten and eleven of complaint, (id., ¶¶ 242(k)-(n), 260(k)-(n)). Conversely, counts ten and eleven of complaint make no mention of the October 8, 2009 transfers. Additionally, plaintiff only provided copies of the October 8, 2009 checks as an exhibit to complaint, (id., Ex. I at 1-4), and failed to mention any "late 2010" transfers to Desibia defendants in its response in opposition to the motion to dismiss while citing to the October 8, 2009 transfers multiple times. Pl.'s Resp. in Opp'n at 3, 6, 12, 16. Accordingly, the reasonable inference is that plaintiff has alleged that only one set of transfers to Desibia defendants occurred in October 2009.

5

service at least twice." GE Inv. Private Placement Partners II v. Parker, 247 F.3d 543, 549 (4th Cir. 2001) (quoting Al-Abood v. El-Shamari, 217 F.3d 225, 238 (4th Cir. 2000)). "This caution is designed to preserve a distinction between ordinary or garden-variety fraud claims better prosecuted under state law and cases involving a more serious scope of activity." Al-Abood, 217 F.3d at 238. "RICO liability is reserved for ongoing unlawful activities whose scope and persistence pose a special threat to social wellbeing." Id. (quoting Menasco, Inc. v. Wasserman, 886 F.2d 681, 684 (4th Cir. 1989)). The acts alleged with respect to the Desibia defendants, which can be distilled to the receipt of one or at the most two fraudulent transfers, lack the "scope and persistence" for which RICO liability was intended to apply and are more properly characterized as garden-variety state law fraudulent transfer claims.

In an attempt to broaden the scope of the fraud as to the Desibia defendants, plaintiff argues that they played a role in planning and benefitting from more than forty transactions involving Andersons' assets. (Pl.'s Mem. in Opp'n at 8). However, the court must consider the allegations with respect to each particular defendant, and the allegations with respect to Desibia defendants' involvement in the broader alleged scheme are conclusory and speculative at best. With the exception of the $26,000.00 transfers, the Desibia defendants are not mentioned in connection with any transfers. (Compl. ¶¶ 39-95; 111-124). Absent some factual enhancement, allegations such as "[d]efendants agreed, cooperated, and conspired with one another to commit the fraudulent transfers," (Compl. ¶ 188), or that the Desibia defendants, Anderson Homes, and CYA "joined in a scheme such that they also acquired and maintained an interest in the enterprise through a pattern of racketeering activity," (id. at 238), are insufficient to satisfy Twombly, not to mention Rule 9(b)'s particularity requirement.

6

Finally, plaintiff contends that a "long line of cases establish that RICO liability may be predicated upon a scheme to defraud creditors through a series of fraudulent transfers." (Pl.'s Mem. in Opp'n at 7-8). The court neither endorses a *per se* rule that fraudulent transfers conducted by use of the mail or wires can never be the basis for a civil RICO claim, nor does it make any judgment as to the sufficiency of the allegations as to other defendants. As the Fourth Circuit has observed, "[t]here is no mechanical formula to assess whether the pattern requirement has been satisfied; it is a commonsensical, fact-specific inquiry." ePlus Technology, Inc. v. Aboud, 313 F.3d 166, 181-82, (4th Cir. 2002) (citations omitted). Furthermore, the cases cited by plaintiff are distinguishable from the present case. See, e.g., Fed. Deposit Ins. Corp. v. Kerr, 637 F. Supp. 828 (W.D.N.C. 1986) (predicate acts also included securities fraud); Gutierrez v. Givens, 989 F. Supp. 1033 (S.D. Cal. 1997) (predicated acts also included racketeering in interstate travel or commerce and money laundering). Here, the facts as alleged with respect to the Desibia defendants are insufficient to establish a pattern of racketeering activity. Accordingly, plaintiff has failed to state a claim as to the Desibia defendants under RICO subsections (b) and (c).

With respect to the subsection (d) conspiracy claim, plaintiff must show that each defendant agreed with another co-conspirator to commit two or more acts of racketeering, although "[t]here is no requirement that each conspirator personally commit illegal acts in furtherance of the conspiracy or to accomplish its objectives." Pryba, 900 F.2d at 760. As explained above, plaintiff's conclusory allegations with respect to the Desibia defendants' involvement in planning and executing the alleged fraudulent scheme are insufficient to allow the court to draw a plausible inference that the Desibia defendants were in agreement as to the alleged conspiracy. See Walters v. McMahen, 795 F. Supp. 2d 350, 355-56 (D. Md. 2011). Accordingly, the RICO conspiracy claim

7

as to the Desibia defendants also fails as a matter of law.

In sum, the RICO claims as to Desibia defendants are dismissed for failure to state a claim upon which relief may be granted.

**2.      Personal Jurisdiction**

**a.      Standard of Review**

Where the court addresses a Rule 12(b)(2) motion without the benefit of evidentiary hearing, but rather relies only on the motions papers, supporting memoranda, affidavits, and pleadings, the plaintiff's burden is simply to make a prima facie showing of jurisdiction. <u>Carefirst of Md. Inc. v. Carefirst Pregnancy Ctrs., Inc.</u>, 334 F.3d 390, 396 (4th Cir. 2003). Ultimately, the burden of proof on the plaintiff is one of preponderance of the evidence. <u>New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.</u>, 416 F.3d 290, 294 (4th Cir. 2005). In this context, the court construes the allegations in the light most favorable to the plaintiff, assumes credibility, and draws the most favorable inferences for the existence of jurisdiction. <u>Carefirst</u>, 334 F.3d at 396. All that is initially required of the plaintiff to make out a prima facie showing of personal jurisdiction are allegations that such jurisdiction exists. <u>Clark v. Remark</u>, No. 92-1682, 1993 U.S. App. LEXIS 10043 *6 (4th Cir. Apr. 29, 1993).

However, a plaintiff may not rest on mere jurisdictional allegations where defendants have countered those allegations with evidence that jurisdiction does not exist. <u>Id.</u> (citing <u>Barclays Leasing v. Nat'l Bus. Sys.</u>, 750 F. Supp. 184, 186 (W.D.N.C. 1990)). Rather, plaintiff must come forward with affidavits or other evidence to counter defendants' arguments, and once both parties have presented evidence, factual conflicts are resolved in favor of the party asserting jurisdiction. <u>Id.</u> In construing the pleadings, affidavits, and other supporting documents in the light most

8

favorable to plaintiff, the court does not "credit conclusory allegations or draw farfetched inferences." Masselli & Lane, PC v. Miller & Schuh, PA, No. 99-2440, 2000 U.S. App. LEXIS 11932 * 5 (4th Cir. May 30, 2000) (citations omitted).

### b. Analysis

The Desibia defendants contend that, absent RICO's provision for nationwide service and the exercise of personal jurisdiction over foreign defendants, they are not subject to personal jurisdiction in North Carolina. Plaintiff faces a two-part test in establishing personal jurisdiction over a nonresident defendant: (1) jurisdiction must be authorized by the state long-arm statute and (2) the exercise of jurisdiction in the particular case must be consistent with due process. Christian Sci. Bd. of Dirs. v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001). North Carolina's long-arm statute extends jurisdiction to the full extent permitted by the Due Process Clause. Id. Therefore, the court need only determine whether "the defendant has such 'minimal contacts' with the forum state that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Id. (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

To establish general jurisdiction, "the defendant's activities in the State must have been 'continuous and systematic,' a more demanding standard than is necessary for establishing specific jurisdiction." ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002). In determining whether the exercise of specific jurisdiction is appropriate, the court weighs three factors: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the . . . claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." Id.

9

According to their declarations, the Desibia defendants have never resided in or owned property in North Carolina, nor have they conducted or solicited business in North Carolina, but they have traveled to North Carolina for "family visits." (Decl. of Alexandra Desibia ¶¶ 4-7; Decl. of Elizabeth Desibia ¶¶ 4-7; Decl. of Linda Desibia ¶¶ 4-7; Decl. of Quinn Desibia ¶¶ 4-7). It is not necessary for the court to determine at this juncture whether a prescribed number of "family visits" would or would not rise to the level of continuous and systematic contacts with the forum necessary to establish general jurisdiction, where the declarations at issue provide no indication as to the frequency or duration of these visits. Id. Furthermore, "[e]ven a single contact may be sufficient to create [specific] jurisdiction when the cause of action arises out of that single contact, provided that the principle of 'fair play and substantial justice' is not thereby offended." Carefirst, 334 F.3d at 397.

Given the nature of the allegations, i.e., fraudulent transfers between family members, and construing the allegations in the light most favorable to the plaintiff and drawing the most favorable inferences for the existence of jurisdiction, the motion to dismiss for lack of personal jurisdiction is denied.

    **B.**    **Motion for Costs and to Strike**

        **1.**    **Rule 41(d) Motion for Costs**

The Anderson defendants contend that this action is based on some of the same transactions and includes some of the same claims plaintiff asserted against them in a prior state court action and that, therefore, pursuant to Rule 41(d), this court should order plaintiff to pay these defendants' costs in defending the prior action and stay these proceedings pending plaintiff's compliance with such order. In response, plaintiff does not appear to contest that some of the claims in this action were

10

previously asserted in the prior state court action, which was voluntarily dismissed on the second day of trial, but, rather, contends that the current action is much broader than the state court action. Furthermore, plaintiff argues that the state and not the federal rule of procedure governs the instant request for costs, and thus the court is strictly limited in the types of costs that may be awarded. Further, plaintiff argues that even if the federal rule applies, an award of costs is not justified.

>The federal rule provides as follows:
>
>>If a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court: (1) may order the plaintiff to pay all or part of the costs of that previous action; and (2) may stay the proceedings until the plaintiff has complied.

Fed. R. Civ. P. 41(d). The state rule is similar in that it provides for payment of costs and a stay of proceedings, yet differs in that the language in the state rule is mandatory and not permissive:

>A plaintiff who dismisses an action or claim under section (a) of this rule shall be taxed with the costs of the action unless the action was brought in forma pauperis. If a plaintiff who has once dismissed an action in any court commences an action based upon or including the same claim against the same defendant before the payment of the costs of the action previously dismissed, unless such previous action was brought in forma pauperis, the court, upon motion of the defendant, shall make an order for the payment of such costs by the plaintiff within 30 days and shall stay the proceedings in the action until the plaintiff has complied with the order. If the plaintiff does not comply with the order, the court shall dismiss the action.

N.C. Gen. Stat. § 1A-1, Rule 41(d).

Plaintiff first argues that the state and federal rules are consistent and that, therefore, this court should apply the state procedural rule and related state statutes limiting the categories of costs that may be awarded. (See Pl's. Opp. at 4-12). The Supreme Court in Hanna considered whether service of process in a civil action brought in federal court under diversity jurisdiction would be governed by the Federal Rules of Civil Procedure or a contrary Massachusetts law that required "in hand" service. 380 U.S. at 461-62. The Court ruled that where the state and federal rules were in

11

direct conflict, the federal rule controlled. Id. at 473-74. In doing so, the Court noted that it had only "held applicable a state rule in the face of an argument that the situation was governed by one of the Federal Rules" where the "scope of the Federal Rule was not as broad as the losing party urged, and therefore, there being no Federal Rule which covered the point in dispute, Erie commanded the enforcement of the state law." Id. at 470.

Such is not the case here where the federal rule sufficiently covers the "point in dispute." See Kahn v. Sturgil, 66 F.R.D. 487, 491 (M.D.N.C. 1975). Furthermore, while the state and federal rule contemplate the same issue, they address it in contradictory ways, i.e., a state court is required to order payment of costs, to impose a stay, and ultimately to dismiss the case in the event of noncompliance, whereas the federal court is given broad discretion to impose such measures. The state and federal rules are in conflict; ergo, the federal rule is controlling. Id.; Hanna, 380 U.S. at 473.

Even assuming, arguendo, that plaintiff is correct that the state and federal rules are consistent, this court would still be bound to apply the federal rule. The Court unequivocally stated in Hanna that "were there no conflicting state procedure," the Federal procedural rule "would clearly control." 380 U.S. at 465 (citing Nat'l Equip. Rental, Ltd. v. Szukhent, 375 U.S. 311, 316 (1963)). See also Hottle v. Beech Aircraft Corp., 47 F.3d 106, 109 (4th Cir. 1995) ("[A]s a general rule, a federal court sitting in diversity is to apply state substantive law and federal procedural law.") (citing Stonehocker v. General Motors Corp., 587 F.2d 151, 154 (4th Cir. 1978)). Thus, the court will apply the federal rule.

Plaintiff contends that even if the court applies the federal rule, an award of costs is not justified. Whether to award costs pursuant to Rule 41(d) is within the sound discretion of the trial

court. Hython v. City of Steubenville, No. 95-3629, 1996 U.S. App. LEXIS 22264 *4 (6th Cir. Aug. 12, 1996) (citing Wright & Miller, Federal Practice and Procedure: Civil 2d § 2375 at 415 (1995)). Plaintiff explains its basis for dismissal of the state court fraudulent conveyance action as follows:

> The 2010 matter proceeded to trial before Dare County Superior Court Judge Jerry R. Tillett. Trial proceedings involved two witnesses (Gary Anderson and Tom Sims) who testified on a single day, October 5, 2011. Plaintiff's fraudulent conveyance complaint requested a series of remedies against CYA OBX, LLC, including execution sale and receivership over the fraudulently transferred real estate. On the evening of October 5, 2011, Judge Tillett informed Plaintiff's counsel that he would not grant Plaintiff any remedy other than a judgment against CYA OBX, LLC. **Plaintiff disagreed with Judge Tillett's election of remedies statement. . . . Plaintiff understood that, if it did not dismiss the proceedings, the parties would spend significantly higher costs proceeding with Plaintiff's case in chief, appealing Judge Tillett's eventual ruling, and conducting remanded proceedings.** Accordingly, Plaintiff dismissed the 2010 case without prejudice when the courthouse opened the next morning.

(Pl.'s Opp. at 3) (emphasis added). Plaintiff dismissed the state court action on the second day of trial because plaintiff took issue with the Judge's ruling and determined implicitly to proceed again before another tribunal.

Rule 41(d) serves the remedial purpose of preventing "vexatious litigation" and forum shopping, including "attempts to gain any tactical advantage by dismissing and refiling th[e] suit." Rogers v. Wal-Mart Stores, Inc., 230 F.3d 868, 874 (6th Cir. 2000) (citations omitted). Plaintiff's dismissal of one suit in search of a more favorable ruling in another court is precisely the type of forum shopping conduct that Rule 41(d) was enacted to redress. See id. These defendants are entitled to an award of costs, and the court must now determine the appropriate amount.

The Anderson defendants seek to recover $66,098.79, which sum is itemized as follows: $2,075.00 for an appraisal; $1,200.00 for the appraiser's appearance fee for trial; $1,265.00 in travel

13

and accommodation expenses for two additional non-testifying trial witnesses; and $61,558.79 in attorney's fees and costs in defending two state court cases, $27,553.89 in No. 09-CVS-1134 and $34,024.90 in No. 10-CVS-322. (Defs.' Br. in Supp. at 3-4).

As an initial matter, the appraisal cost and appraiser's appearance fee were paid by Anderson Homes of the Outer Banks, which does not appear to have been a party to the prior litigation. (Defs.' 2d. Mot. for Costs and Mot. to Strike, Ex. 1, 3). Accordingly, the court finds that it would be inappropriate to award those costs. Additionally, although the court has not been provided with a copy of the complaint in the first state court case, No. 09-CVS-1134, it appears that it was initiated in order to domesticate plaintiff's Florida judgment and to conduct post-judgment discovery, (Pl.'s Opp. at 2), and that the second state court case, No. 10-CVS-322, was the fraudulent conveyance action, which embodied some of the claims brought in this action. Importantly, plaintiff contends that it did not dismiss the first case, which is a prerequisite for an award of costs under Rule 41(d), and defendants have provided no evidence to the contrary. (Pl.'s Opp. at 11). Accordingly, the court finds that it would be inappropriate to award costs attributable to the first state court action, No. 09-CVS-1134.

With respect to the travel and accommodation costs of $1,265.00 paid to the two non-testifying trial witnesses, John Desibia and Adam Meyer, the court finds it appropriate to award the actual costs of travel, meals and accommodations expended by these witnesses, not to exceed the $1,265.00 expense incurred by Gary Anderson. (Defs.' 2d. Mot., Ex. 3, Aff. of Gary Anderson). Counsel are directed to confer in a good faith attempt to reach an agreement on the appropriate amount. In the event they fail to do so, Anderson defendants are directed to file a Bill of Costs within **fourteen (14) days** of the date of this order, to which plaintiff will have **fourteen (14) days**

14

to object.

With respect to the request for attorney's fees and costs of $34,024.90 incurred in defending the state court fraudulent conveyance action, the court will award the claimed costs of $53.40, (Defs.' 2d. Mot. Ex. 3, Aff. of Dana W. Roepcke Ex. A), but declines to award attorney's fees, for the reasons stated below.

The Fourth Circuit has not addressed the issue of whether, for the purpose of Rule 41(d), "costs" include attorney's fees, and other circuit courts have reached varying conclusions. Compare Meredith v. Stovall, No. 99-3350, 2000 U.S. App. LEXIS 14553 *4, (10th Cir. June 23, 2000) (finding no abuse of discretion in district court's award of attorney's fees pursuant to Rule 41(d)), and Evans v. Safeway Stores, Inc., 623 F.2d 121, 122 (8th Cir. 1980) (affirming a Rule 41(d) award of attorney's fees without substantive discussion), with Esposito v. Piatrowski, 223 F.3d 497, 501 (7th Cir. 2000) (holding that a party may recover reasonable attorney's fees as part of its "costs" under Rule 41(d) only where the underlying statute defines costs to include attorney's fees), and Rogers v. Wal-Mart Stores, Inc., 230 F.3d 868, 875 (6th Cir. 2000) (vacating Rule 41(d) award of attorney's fees, because they are not expressly provided for by the rule).

Decisions in the lower court are likewise divergent, although some have noted that a majority allow for attorney's fees in an award of costs under Rule 41(d). Compare Andrews v. Am.'s Living Ctrs., LLC, No. 1:10cv257, 2011 WL 3359921, at *2 (W.D.N.C. Aug. 3, 2011) (concluding that "costs" as used in Rule 41(d) includes attorney's fees, but limiting award of fees to those associated with motion to dismiss), and Katen v. Katen, No. 5:97-CV-275-BR, 1998 U.S. Dist. LEXIS 11592 *4 (E.D.N.C. Feb. 28, 1998) (concluding that "costs" as used in Rule 41(d) includes attorney's fees, but declining to award fees associated with work that would be useful in second action), with Irons,

15

LLC v. Brandes, No. 06-0904, 2007 WL 495802, at *1 (D.D.C. Feb. 15, 2007) (declining to award attorney's fees, because they are not explicitly provided for under Rule 41(d)), and Lawson v. Toney, 169 F. Supp. 2d 456, 466 (M.D.N.C. 2001) (same).

The plain language of Rule 41(d) provides only for an award of "costs," and "the law generally recognizes a difference between the terms 'costs' and 'attorney fees' . . . ." Rogers, 230 F.3d at 874. Many of the Federal Rules expressly provide for an award of attorney's fees, see, e.g., Fed. R. Civ. P. 16(f)(2), 26(g)(3), 30(g), 37(a)(5), 56(h), which indicates that the absence of such provision in Rule 41(d) is purposeful. Id. at 875. In Marek v. Chesny, 473 U.S. 1 (1985), the court considered whether costs included attorney's fees for purposes of Rule 68, Offer of Judgment, which expressly provided for an award of "costs" but neither defined the term, nor was it discussed in the Rule's history. Id. at 7-8. The court first acknowledged the "American Rule," that each party bear its own attorney's fees and recognized certain exceptions, such as where Congress had provided for an award of attorney's fees by statute. Id. at 8. The court then reasoned that "given the importance of 'costs' to the Rule, it is very unlikely that this omission was mere oversight" and concluded that "the most reasonable inference is that the term "costs" in Rule 68 was intended to refer to all costs properly awardable under the relevant substantive statute or other authority." Id. at 9. This court finds that the reasoning of Marek naturally extends to Rule 41(d), where the award of costs is an important component of the Rule, and yet the term "costs" was left undefined in the Rule itself. See Esposito, 223 F.3d 500-01.

While some courts have declined to extend Marek to Rule 41(d), based on, among other things, a subsequent amendment to Rule 54(d) that distinguished "costs other than attorney's fees" and "attorney's fees," Cadle Co. v. Beury, 242 F.R.D. 695, 697-98 (S.D.Ga. 2007), this court is not

16

persuaded by such reasoning where neither Rule 68, at issue in <u>Marek</u>, nor Rule 41(d) has been amended in the same manner as Rule 54(d) and there is no indication that the drafters intended a broader application of the amendment beyond Rule 54(d) itself. To award attorney's fees under Rule 41(d), only when a party would be entitled to recover them as costs in the cause of action underlying the first dismissed suit, serves the remedial purpose of the Rule without offense to the long standing principle that, absent Congressional intent, attorney's fees are not recoverable costs.

These defendants have not claimed that attorney's fees are recoverable under the North Carolina Uniform Fraudulent Transfer Act or that fees were awarded by the state court, and the court has found no provision for attorney's fees within the act itself. <u>See</u> N.C. Gen. Stat. §§ 39-23.1 to 39-23.12. Accordingly, because attorney's fees are not expressly provided for under Rule 41(d) and are not provided for by the underlying statute that formed the basis of the state court action, these defendants are not entitled to recover their attorney's fees pursuant to Rule 41(d).

In sum, the court will award $53.40 in costs plus the actual costs expended and reimbursed to the non-testifying witnesses, not to exceed $1,265.00, as set forth in this order. Plaintiff is ordered to satisfy its obligation within **fourteen (14) days** of entry of this order. In the event the parties are unable to reach agreement with respect to the costs associated with the non-testifying witnesses, plaintiff may defer payment of the $53.40 until the court rules on the Bill of Costs. The court, in its discretion, declines to stay this proceeding pending payment of the awarded costs.

### 2. Rule 12(f) Motion to Strike

Anderson defendants contend that paragraphs 63, 66 through 76, 120 and 123 are "irrelevant, immaterial and inadmissible pursuant to Rules 402, 403, and 404" of the Federal Rules of Civil Procedure and should be stricken. (Mot. for Costs and to Strike at 3). Rule 12(f) permits a district

17

court, on motion of a party or on its own initiative, to strike from a pleading "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Rule 12(f) motions are generally viewed with disfavor because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." Waste Mgmt. Holdings, Inc. v. Gilmore, 252 F.3d 316, 347 (4th Cir. 2001) (citations omitted). Therefore, motions to strike are rather strictly considered and a showing of prejudice is often required to obtain relief. See Godfredson v. JBC Legal Group, P.C., 387 F. Supp. 2d 543, 547-48 (E.D.N.C. 2005). The court is required to "view the pleading under attack in a light most favorable to the pleader." Racick v. Dominion Law Assocs., 270 F.R.D. 228, 232 (E.D.N.C. 2010).

The allegations at issue concern Andersons' alleged failure to report certain transactions on their tax returns and financial records, (Compl. ¶¶ 63, 120, 123), and the alleged circumstances surrounding state court contempt proceedings against Andersons in the prior fraudulent conveyance action. (Id. 66-76). It is not clear to the court that the subject matter of these allegations is irrelevant to the claims in this case. These defendants will have the opportunity to challenge the admissibility of evidence related to these allegations in due course, which alleviates the alleged danger of prejudice. See Milliken & Co. v. CNA Holdings, Inc., No. 3:08-CV-578, 2011 WL 3444013, at *15 (W.D.N.C. Aug. 8, 2011). Accordingly, these defendants have failed to carry the heavy burden of Rule 12(f), and the motion to strike is denied.

### C.    Motion for Extension of Time for Service and to Conduct Discovery

Plaintiff seeks a 120-day extension of time to serve defendant Paris Faschette ("Faschette") and to conduct non-party discovery to ascertain his whereabouts for the purpose of effecting service. No response to the motion has been filed. Plaintiff contends that despite its diligence in attempting

to locate Faschette, it has been unable to identify any such person and, thus, proposes to depose two alleged associates of Faschette in order to obtain information to aide in effecting service.

Rule 4(m) allows the court to extend the time for service, Fed. R. Civ. P. 4(m), and Rule 26(d) provides that a party may seek discovery prior to the Rule 26(f) conference when authorized by court order, Fed. R. Civ. P. 26(d)(1). The court finds good cause to grant both requests. Plaintiff shall have sixty (60) days from entry of this order to conduct limited third-party discovery with respect to Faschette and one hundred twenty (120) days from entry of this order to effect service on Faschette. Failure to achieve service within this time period will result in the dismissal of defendant Faschette.

## CONCLUSION

The Desibia defendants' motion to dismiss (DE # 48) is **GRANTED IN PART** as to the RICO claims and **DENIED IN PART** as to lack of personal jurisdiction. Other defendants' first motion for costs and to strike (DE # 50) is **DENIED AS MOOT** and the second motion for costs and to strike (DE # 55) is **GRANTED IN PART AND DENIED IN PART** as to the request for costs, as set forth in this order, and **DENIED** as to the request to strike certain allegations from the complaint. Plaintiff's motion for extension of time for service and to conduct discovery (DE # 60) is **GRANTED.**

SO ORDERED, this the 26th day of September, 2012.

_____
LOUISE W. FLANAGAN
United States District Judge